Colón Birriel, Juez Ponente
*677 TEXTO COMPLETO DE LA SENTENCIA
Nancy Martínez Fournier, la "interventora-peticionaria" (en adelante "Martínez") recurre oportunamente de una Resolución emitida por el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Salinas, el 24 de noviembre de 2000, notificada el 20 de diciembre, según certificación suscrita el 14 de febrero, por Zaída M. Colón, Secretaria General del referido tribunal. La resolución recurrida se transcribe a continuación:

"RESOLUCION

Habiéndose expirado el término concedido a la interventora sin haber ésta presentado escrito en duplica a réplica, habido el Tribunal examinado todos los autos del caso y las alegaciones de las partes se declara no ha lugar la solicitud de dicha parte interventora.

Continúense los procedimientos.

Notifíquese.

Salinas, Puerto Rico, a 24 de noviembre de 2000.

Fdo.

Leticia Ortiz Feliciano

Juez Superior

Sala de Salinas

Certifico: Que envié copia de la presente Resolución, a: Lie. Angel Alicea Pérez, Lie. Héctor A. Carballo Ortiz, Lie. Jesús M. Jiménez González, a sus respectivas direcciones en récord.

Zaida M. Colón Santiago

Secretaria General

Por:

Secretaria General"

Martínez solicita la expedición de un auto de certiorari y dejemos sin efecto la referida resolución. El dictamen declaró No Ha Lugar su Moción Urgente Sobre Nulidad de Emplazamiento, Sentencia, Acto de Subasta y Solicitud Para Que Se Deje Sin Efecto Señalamiento, presentada en el caso Banco Bilbao Vizcaya de Puerto Rico v. Rosendo Martínez Rodríguez y otros, Civil Núm. G4CI-99-00231, sobre Cobro de Dinero y Ejecución de Hipoteca por la Vía Ordinaria. Petición de Certiorari, Resolución, a la pág. 1 del apéndice. Mediante nuestra "Resolución" de 14 de febrero de 2001, le ordenamos mostrar causa al recurrido Banco Bilbao Vizcaya (en adelante el "Banco"), por la cual la resolución recurrida no debía ser revocada; nos ilustrara, entre otros, si la referida moción sobre nulidad de emplazamiento, etc., no debía ser considerada como una de relevo al amparo de la Regla 49.2 de las de Procedimiento Civil. En auxilio de nuestra jurisdicción, paralizamos los procedimientos en instancia hasta la disposición del recurso. Por su parte, el Banco se opuso a la solicitud de Martínez en su escrito de mostrar causa. Con el beneficio de los escritos, resolvemos.
II
Surge de la petición que, el 17 de junio de 1999, el Banco presentó una demanda sobre Cobro de Dinero y Ejecución de Hipoteca por la Vía Ordinaria, contra Don Rosendo Martínez Rodríguez (Don Rosendo), Doña Rosa M. Foumier (Doña Rosa) y la Sociedad de Gananciales compuesta por ambos, por alegadamente haber *678 incumplido sus obligaciones en un pagaré suscrito el 30 de diciembre de 1991, a favor del Ponce Federal Bank o a su orden, por la suma de $28,100.00, con intereses a razón del 8 1/2% anual y 10% para costas, gastos y honorarios de abogado en caso de ejecución judicial. El pagaré fue garantizado mediante la Escritura de Hipoteca número 38, otorgada en igual fecha, en Ponce, P.R., ante el Notario Público José M. González Román, garantizando el pagaré la residencia de los deudores hipotecarios ubicada en el número A-4 de la Calle 2 de la Urbanización Eugene F. Rice, en el Barrio Aguirre de Salinas. La obligación del pago mensual del referido pagaré se dejó de satisfacer desde el 1ro. de agosto de 1998. Petición de Certiorari, Demanda, a las págs. 3-5 del apéndice. Los emplazamientos fueron expedidos el 17 junio de 1999, fecha de la radicación de la demanda.
A Doña Rosa se le emplazó el 17 de junio de 1999, a las 2:30 p.m. en la calle 2 #A4, en la Urbanización Eugene F. Rice, en el Barrio Aguirre, en el municipio de Salinas, según expresó el Banco en su mostración de causa. Este emplazamiento, al igual que el diligenciado en la persona de Don Rosendo el 14 de noviembre de 1999, en la calle Jérico A-9, Urbanización Villa Mar, Guayama, P.R., que es "una casa de recuperación" que opera bajo el nombre "Jóvenes de Ayer”, no fue acompañado con el recurso de Martínez, según informó el Banco, por lo cual solicitó la desestimación del recurso por incumplimiento con la Regla 34 (E) (e) de nuestro Reglamento. Surge de la Certificación del Diligenciamiento por Persona Particular del Emplazador Carlos Arroyo, que Martínez acompañó a su petición, que Arroyo emplazó a Don Rosendo (según expresó el Banco en su oposición por conducto de Madeline Iraola, Administradora del Hogar), como tal y en representación de la Sociedad de Gananciales compuesta por éste y Doña Rosa, el 8 de julio de 1999, a las 2:00 p.m., en la calle Jónico #A-9, en la Urbanización Villa Mar, Guayama. Petición de Certiorari, Emplazamiento, a las págs. 7-8 del apéndice. Por otro lado, el Banco expresó: "[q]ue al percatamos que el emplazamiento de Rosendo Martínez Rodríguez no se le entregó a él y sí a la Administradora de un hogar de envejecientes, le requerimos al diligenciante que para cumplir con la Regla 4.4C de Procedimiento Civil tenía que entregarle copia al Sr. Martínez. Por tal razón, el día 10 de noviembre de 1999, se radicó una moción solicitando un término adicional para diligenciar el emplazamiento, ya que su diligenciamiento vencía el 17 de diciembre de 1999. No recibimos orden con relación a dicha moción; no obstante, no era necesario debido a que con fecha del 29 de noviembre de 1999, la parte demandante envió el emplazamiento de Rosendo Martínez Rodríguez, debidamente diligenciado el cual se le entregó el día 12 de noviembre de 1999 en la dirección en donde está el hogar. Es decir, Calle Jérico #A-9, Villamar, Guayama. En otras palabras, que el día 8 de julio de 1999, se le entregó a la administradora del hogar y el día 12 de noviembre de 1999, se le entregó al demandado Rosendo Martínez Rodríguez". Petición de Certiorari, Réplica a Moción Urgente Sobre Nulidad de Emplazamiento..., a la pág. 42 del apéndice.
El 28 de diciembre de 1999, el Banco presentó un escrito intitulado Moción Solicitando Anotación de Rebeldía y Registro de Sentencia, solicitando se dieran por admitidas las alegaciones de la demanda indicando que era innecesario el celebrar vista. Acompañó una declaración jurada de William Vázquez González y copia de la evidencia documental para sustentar su solicitud. En el apartado 8 de la declaración, se hizo constar, entre otras cosas: "[q]ue a nuestro mejor entender y saber y de la información que surge de los expedientes del banco, la parte demandada no es menor de edad, incapacitada, ni miembro de las fuerzas armadas." Petición de Certiorari, Moción Solicitando Anotación de Rebeldía y Registro de Sentencia, Declaración Jurada, a las págs. 9-13 del apéndice. Así las cosas, en vista a la moción del Banco, se emitió, el 28 de enero de 2000, la sentencia objeto de revisión, archivándose en los autos copia de su notificación el 17 de febrero de 2000. Se notificó copia de la sentencia a la dirección residencial de Don Rosendo y Doña Rosa, a saber: Urb. Eugene F. Rice, A-4, Cale 2 Salinas, P.R. 00751. Petición de Certiorari, Notificación de Sentencia, Sentencia, a las págs. 14-16 del apéndice.
Con fecha 17 de marzo de 2000, el Banco presentó una Moción de Ejecución de Sentencia. El 7 de junio de 2000, se expidió el Edicto de Subasta notificándole a Don Rosendo y a Doña Rosa copia de éste, a una dirección postal y a su dirección residencial. Petición de Certiorari, Moción de Ejecución..., Edicto de Subasta, Comunicación de 14 de julio, a las págs. 17-21 y 43 del apéndice. El 9 de agosto de 2000, Martínez presentó Moción Solicitando Permiso de Intervención y Remedio. Alegó que ella vivía en los Estados Unidos de *679 Norteamérica y al venir a residir a Puerto Rico, se encontró que su padre Don Rosendo, en ese entonces de 91 años, y su madre de crianza Doña Rosa, de 90 años, estaban en estado de salud deficiente; que éstos padecían de Alzheimer y senilidad, respectivamente, y su estado económico era caótico; se enteró en ese momento de la acción legal contra sus padres, los que por su condición de salud, no tenían idea de lo que estaba ocurriendo. Petición de Certiorari, Moción Solicitando Permiso de Intervención y Remedio, a las págs. 22-24 del apéndice.
Posteriormente, el 10 de agosto de 2000, notificada ese mismo día, el foro recurrido concedió a Martínez hasta el 23 de agosto para llegar a un acuerdo con el Banco o de lo contrario se celebraría la subasta el 24 de agosto. La orden no fue incluida en el apéndice del recurso, por lo que el Banco expresó que era una segunda razón para su desestimación, por incumplimiento con la Regla 34 (E) (1) (e) de nuestro Reglamento. El 23 de agosto, expresó el Banco que informó vía fax al anterior representante de Martínez, que el balance para reinstalar el préstamo era de $10,435.97. Al no recibir respuesta, la subasta se celebró el 24 de agosto, según pautada por el foro recurrido.
El 13 de septiembre de 2000, Martínez compareció por conducto de otro abogado, su actual representante (no se solicitó renuncia por el anterior representante, ni autorización para asumir representación), en escrito intitulado Moción Urgente Sobre Nulidad de Emplazamiento; Sentencia, Acto de Subasta y Solicitud Para que se Deje Sin Efecto Lanzamiento. Petición de Certiorari, Moción Urgente..., a las págs. 25-29 del apéndice. Se le concedieron veinte (20) días al Banco para exponer su posición en tomo a lo solicitado. Petición de Certiorari, Notificación, a las págs. 38-39 del apéndice. El 28 de septiembre de 2000, Eufemio Colón, pro se, en representación de Cars Investment & Development Corp, persona a quien se le adjudicó la buena pro en la subasta celebrada, presentó una Moción Sobre Retiro de Fondos. Alegó no tener inconveniente en que se anulare la subasta efectuada. Petición de Certiorari, Moción Sobre Retiro de Fondos, a la pág. 40 del apéndice.
El 13 de octubre de 2000, el Banco presentó Réplica a Moción Urgente Sobre Nulidad de Emplazamiento, etc. Planteó falta de capacidad de Martínez para solicitar intervención bajo la Regla 21 de las Reglas de Procedimiento Civil, por carecer de legitimación activa. Alegó, además, que el emplazamiento servido a Doña Rosa no era impugnable por no haber motivos para creer que no tuviera incapacidad alguna; que fue emplazada en su hogar y no tenía sentido alguno, el argumento de que vivía donde fue emplazado Don Rosendo (es decir, en el hogar de envejecientes), pues lo lógico era que se emplazaran a ambos en el mismo sitio; que la sentencia se notificó a la última dirección conocida de los demandados; y que el edicto de subasta se notificó a esa dirección, además a la del apartado de correo, hecho que ocultó Martínez. Petición de Certiorari, Réplica a Moción..., a las págs. 41-45 del apéndice. El 23 de octubre, el representante de Martínez solicitó hasta el 6 de noviembre, conforme a las Reglas de Procedimiento Civil, para presentar dúplica. Petición de Certiorari, Moción Solicitando Término Adicional Para Presentar Dúplica, a las págs. 50-51 del apéndice. Lo solicitado fue concedido por orden del 26 de octubre, notificada de su archivo en autos el 10 de noviembre de 2000, es decir, luego de expirado el término concedido. Petición de Certiorari, Notificación, a la pág. 52 del apéndice. El 17 de noviembre de 2000, Martínez presentó su Dúplica a Escrito en Oposición, la que no fue tomada en consideración por el foro recurrido, toda vez que había dictado resolución el 24 de noviembre, denegando la intervención solicitada por Martínez. El 27 de diciembre, Martínez solicitó reconsideración. Petición de Certiorari, Moción de Reconsideración, a las págs. 65-69 del apéndice. Tomamos conocimiento judicial de que esa moción fue declarada "No Ha Lugar" mediante resolución de 27 de diciembre de 2000, archivada en los autos copia de su notificación el 30 de enero de 2001.
Inconforme, le imputa error al foro recurrido al negarle su moción sobre nulidad de emplazamientos, acto de subasta y solicitud para que se dejara sin efecto lanzamiento, y no celebrar una vista para determinar la condición mental de los demandados, nombrárseles un tutor y levantar las defensas afirmativas correspondientes.
III
La Regla 21 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, regula la intervención de las personas en *680 los pleitos. Es un mecanismo procesal útil, frecuentemente empleado en la práctica. La regla no crea derechos sustantivos o causa de acción alguna. Es simplemente una disposición mediante la cual una persona que no es parte en el pleito, comparece, voluntariamente o por necesidad, a presentar una reclamación o una defensa, en una acción pendiente, y convertirse en ese modo en parte para fines de la reclamación o defensa presentada. Véase Rocca v. Thompson, 223 U.S. 317 (1912). En algunas circunstancias, el derecho a intervenir es absoluto, mientras que en otras depende de la discreción judicial. La regla debe interpretarse liberalmente y ofrece la ventaja de proteger a terceras personas que no son parte en el pleito, que podrían ser muchas y que, además, podrían tener múltiples intereses en el litigio. José A. Cuevas Segarra, Práctica Procesal Puertorriqueña, a la pág. 108.
Es decir, la intervención es un mecanismo procesal mediante el cual una persona que no es parte en el pleito se puede unir voluntariamente como litigante en el pleito. La intervención puede ser, como cuestión de derecho, o permisible. Regla 21.1 y 21.2 de las de Procedimiento Civil, supra. La intervención, como cuestión de derecho, opera cuando: a) una ley o las propias Reglas de Procedimiento Civil le confieren un derecho incondicional a una persona a intervenir en el pleito; o b) cuando el solicitante reclame algún derecho o interés en la propiedad o asunto objeto del litigio que pudiere de hecho quedar afectado con la disposición final del pleito. A modo de ejemplo, el que una parte indispensable haya quedado fuera del pleito. Por su parte, la intervención permisible o discrecional opera cuando: a) por ley se le confiera a una persona el derecho condicional a intervenir; o b) cuando la reclamación o defensa de la persona y el pleito principal tuvieren en común una cuestión de hecho o de derecho.
Ninguna ley, ni las Reglas de Procedimiento Civil, le confieren derecho a Martínez a intervenir en el presente caso a nombre de sus padres. Tampoco ésta reclama derecho o interés alguno en la propiedad hipotecada objeto del recurso. Su reclamación o defensa no tiene en común una cuestión de hecho o de derecho con el pleito que dio origen a la controversia. En resumen, Martínez no tiene un derecho o interés alguno en la propiedad objeto del litigio del que pudiese resultar afectado de no concedérsele intervención.
Por su parre, la Regla 15.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, en lo pertinente, dispone que "[t]odo pleito se tramitará a nombre de la persona que por ley tenga el derecho que se reclama, pero una persona autorizada por ley podrá demandar sin el concurso de aquélla para cuyo beneficio se hace la reclamación...”. Martínez, mediante su escrito de 9 de agosto de 2000, solicitó permiso para intervenir y para que se paralizara el proceso de la subasta de la propiedad que se había señalado para el 10 de agosto de 2000. Petición de Certiorari, Moción Solicitando Permiso de Intervención y Remedio, supra. El foro recurrido le concedió hasta el 23 de agosto para llegar a un acuerdo o de lo contrario se celebraría la subasta el 24 de agosto. El Banco le informó vía "fax" al anterior representante de Martínez, Ledo. Héctor Carballo Ortiz, que el balance para reinstalar el préstamo eran $10,435.97. Se intentó llegar a un acuerdo mediante el cual se abonaría una cantidad de dinero a lo adeudado, a los fines de reinstalar el préstamo hipotecario. El balance adeudado se pagaría en un período de treinta (30) días, de forma tal que los atrasos estuvieran cubiertos en o antes del 23 de septiembre de 2000. El Ledo. Carballo Ortiz manifestó que Martínez no tenía todo el dinero y solicitó tiempo adicional para conseguirlo, a lo que el Banco no consintió. Toda vez que el Banco no recibió ninguna otra respuesta, la subasta se celebró el 24 de agosto de 2000, según pautada.
El hecho de que el foro recurrido hubiese pospuesto la subasta hasta el 23 de agosto, a nuestro juicio, no puede entenderse como que se le dio intervención o legitimación alguna a Martínez en el caso. Lo que dicho foro realizó fue un acto de justicia, es decir, darle una oportunidad adicional a los deudores hipotecarios por conducto de Martínez para que conforme a su solicitud y la anuencia del Banco, pudiesen conseguir lo adeudado y así no continuarse con el proceso de subasta. Ello, en ninguna forma significa que a Martínez se le concediera intervención o legitimación activa en el pleito. A Martínez no le asiste derecho de defender los derechos de su padre en el pleito, pues no tiene ningún tipo de interés en la propiedad hipotecada. En resumen, no cumple con los requisitos para solicitar intervenir en el pleito.
*681 Bajo el supuesto que Martínez tuviese derecho de intervenir como interventora en el pleito y acogiésemos su moción como una de relevo, ¿presentó a tiempo su solicitud conforme lo dispone el procedimiento? Veamos.
El vehículo procesal que tiene a su alcance una parte para dejar sin efecto una sentencia final y firme (incluyendo el pleito independiente con el fin de quedar relevado de una sentencia, orden o procedimiento), son las disposiciones de la Regla 49.2 de las Reglas de Procedimiento Civil. 32 L.P.R.A, Ap. III. Sabido es que nuestro ordenamiento jurídico favorece que los pleitos se resuelvan en sus méritos. No obstante, al hacer uso del remedio de reapertura provisto por la Regla 49.2, supra, debe tenerse en cuenta el interés legítimo de los litigantes y de la sociedad en que la litigación se tramite de forma rápida, económica y que su ádjudicación sea final. La finalidad promueve certeza en los procedimientos judiciales, lo cual es de fundamental importancia para la administración de justicia y para el orden social. De ahí que, como pauta rectora de la discreción conferida por la Regla 49.2, nuestro Tribunal Supremo formuló la norma de que los tribunales de instancia deben establecer un balance justo entre el interés de que los pleitos se resuelvan en sus méritos y el interés en evitar congestión en el calendario y demoras innecesarias en el trámite judicial. Fine Art Wallpaper v. Wolff, 102 D.P.R. 451, 457-58 (1974).
No obstante, la Regla 49.2, supra, no es llave maestra para reabrir un pleito debidamente tramitado. El promovente de la solicitud de reapertura, bajo esta regla, debe ser diligente en la tramitación del caso, es decir, la regla debe invocarse oportunamente y señalarse en la solicitud defensas válidas o meritorias que oponer a la reclamación en su contra. Fine Art Wallpaper v. Wolf, supra, a la pág. 459. Ausente estos criterios, no se puede conceder el relevo, pues la moción de relevo no es sustituto de los remedios apelativos o de revisión disponible para una parte. E.L.A. v. Tribunal Superior, 86 D.P.R. 692, 698 (1962); Builders Ins. Co. v. Tribunal Superior, 100 D.P.R. 401, 404 (1972). Por otro lado, la Regla 49.2, supra, no es llave maestra para reabrir a capricho un pleito ya adjudicado. Bravo v. Srio. de Hacienda, 106 D.P.R. 672, 675 (1978).
La sentencia recurrida fue emitida el 28 de enero ele 2000, archivándose en los autos copia de su notificación el 17 de febrero de ese año. La "Moción Urgente Sobre Nulidad de Emplazamiento; Sentencia, Acto de Subasta y Solicitud Para Que se Deje Sin Efecto Lanzamiento" presentada por Martínez el 13 de septiembre de 2000, de ser considerada como una de relevo y Martínez ser considerada interventora (parte), no produjo efecto legal alguno, pues se presentó en exceso del término de seis (6) meses desde el archivo en autos y en exceso del término de seis (6) meses dispuesto en la Regla 49.2, supra. En la referida moción no se expuso defensa alguna meritoria que pudiesen tener los deudores hipotecarios contra la reclamación del Banco, distinta al alegado emplazamiento defectuoso a éstos. No se aduce defensa de pago u otra similar como mérito a su relevo. En la moción presentada por Martínez, se reconoció los atrasos en los pagos de la hipoteca. Se le concedió tiempo para realizar el pago de los atrasos, pagos que no realizó.
La alegación de que los emplazamientos a los deudores hipotecarios fueron defectuosos, no tiene mérito alguno. Según surge de los documentos ante nuestra consideración, los emplazamientos fueron diligenciados conforme a las disposiciones de la Regla 4.4 de las Reglas de Procedimiento Civil. Tampoco tiene mérito la alegación de que la sentencia fue notificada al hogar de los deudores hipotecarios, en lugar de donde éstos residían, el hogar de los envejecientes. Nada se dispone en nuestras Reglas de Procedimiento Civil de que la sentencia tiene que ser notificada al mismo lugar en que fue emplazado el demandado. Por el contrario, la Regla 65.3(b) que regula las notificaciones de las órdenes y sentencias a las partes, dispone, en lo pertinente, que el "secretario notificará el archivo de una orden o sentencia a las partes en rebeldía por falta de comparecencia remitiéndoles, cuando su identidad fuere conocida, copia de la notificación a la última dirección conocida."
Por último, es improcedente ordenar una vista para determinar si los deudores hipotecarios tenían la capacidad necesaria para entender los procedimientos de ejecución de hipoteca que se estaban llevando a cabo. En el presente caso, el Banco no tuvo conocimiento de que los deudores hipotecarios pudiesen ser incapaces mentales. La Regla 22.2 de las de Procedimiento Civil dispone que "[s]i una parte quedare incapacitada, el tribunal, previa moción notificada en la forma dispuesta en la Regla 22.1, podrá permitir que continúe el pleito *682 por o contra su tutor o defensor judicial." Es después de advenir final y firme la sentencia objeto de ejecución, que Martínez, quien no es parte en el proceso, pretende anularla. Nuestro Tribunal Supremo ha sostenido la validez de sentencias dictadas contra incapacitados mentales, tanto en rebeldía, como sin defensor judicial. Véanse Hernández v. Zapata, 82 D.P.R. 777 (1961), y otros casos allí citados.
En mérito a lo expuesto, y expedido el auto con anterioridad, se confirma la resolución recurrida.
Así lo pronunció y manda el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General